BENJAMIN MARGOLIS and Another, Copartners Doing Business under the Firm Name and Style of MARGOLIS & MEADOW, Plaintiffs, *v.* NATIONAL BELLAS HESS Co., INC., a Domestic Corporation, Defendant.

Supreme Court, New York County, March 24, 1931.

*Gabriel L. Kaplan,* for the plaintiffs.

*Maxwell Goldstein,* for the defendant.

SHIENTAG, J.   The plaintiffs are manufacturers of ladies coats. The defendant is a mail order house, selling articles of wearing apparel, including ladies and misses coats, to consumers throughout the United States.   As a medium of advertising and for the purpose of soliciting orders, defendant publishes and distributes a printed catalogue, containing pictures, descriptions and prices of merchandise offered for sale.

In the latter part of April, 1929, one Haber, a buyer in the employ of the defendant, requested plaintiffs to submit to the defendant for approval certain styles selected by Haber from the plaintiffs' sample line of coats for the fall and winter seasons of the year. It was agreed that if any of the styles submitted were approved by defendant and published in its catalogue, it would purchase from plaintiffs all copies of such style or styles, which it, the defendant, would thereafter sell or offer for sale.   It was also understood that the defendant would return all styles not approved and would not publish such styles in its catalogue or make or offer any copies thereof for sale.   No terms were agreed upon, that being left to future negotiations if and when any styles were approved. Assuming that Haber had no authority to make purchases  on behalf of the defendant, it is conceded that he was empowered to invite the submission of samples; he, therefore, had authority to agree to reasonable limitations and restrictions upon the use of such samples.

In the latter part of April and early in May, 1929, pursuant to their agreement with Haber, plaintiffs submitted to defendant some thirty-nine sample coats, among which was a certain style numbered 700. Of the samples submitted, all of the style numbers were returned except style No. 700, on which this action is based. When plaintiffs demanded the return of this sample, they were informed that it could not be identified and located. The evidence clearly indicates that this explanation was a sham and pretense. Although it did not approve this style number, the defendant retained the plaintiffs' sample and turned it over to another manufacturer, who with some slight alterations which in no way changed the distinguishing feature of plaintiffs' garment, copied it for the defendant. The latter published it in its catalogue as its style No. 9 E 869 and advertised and sold copies thereof, although it failed to purchase any garments of that style from the plaintiffs. The action is for an injunction and to compel the defendant to account for the profits made on the sale of the style in controversy.

Style No. 700 was an original design of the plaintiffs. It was an original creation of their designer who worked exclusively for them. Its distinguishing feature was a special style of cloak effect. A style is not the less original because it may be an adaptation or combination of certain other styles observed at exhibitions, in model houses or in fashion magazines. The source is not so important as the result. If the finished creation is something which appeals to the eye as distinctive, as different — it is original. (*Phœnix Knitting Works* v. *Bradley Co.*, 181 Fed. 163; *Kraus* v. *Fitzpatrick*, 34 id. 39; *Phœnix Knitting Works* v. *Grushlaw*, 181 id. 166, 167; *Gorham* v. *White*, 81 U. S. 511.)

The defendant's style No. 9 E 869 was a copy of plaintiffs' style No. 700. The defendant obtained that style from plaintiffs' sample and from no other source. The two styles look alike, they are alike. To be sure, the defendant made some slight changes in his style so as to assert a colorable claim to differentiation, but the outstanding, striking characteristic of plaintiffs' sample, its distinctive cape effect, was copied exactly by defendant. " The rules applying to imitation of a complete article apply equally to copying a single salient feature or part." (Nims Unfair Competition [3d ed.], § 137.) The defendant copied and pirated the plaintiffs' original design.

The piracy of styles or designs is a problem of much concern in many important industries, particularly the ladies garment industry. The formulation of a comprehensive policy with respect thereto is, generally speaking, for the Legislature rather than the courts. Many elements enter into it of a practical, administrative, economic

and commercial character. The business conscience on this question, though troubled and at times stirred, is still somewhat flexible. The whole situation is in a state of transition and mutation. The problem is how to retain for a man the benefits of his creative genius, without at the same time unduly restricting and hampering manufacture and trade.

This is not a case which involves a statutory patent or copyright. It is not one in which the design was obtained by fraudulent means. Nor is it one involving " palming off " the defendant's product as the plaintiffs'. Are then the plaintiffs, under the circumstances of this case, entitled to equitable relief?

Despite the danger of generalization in cases of this character, the following principles established by the authorities may be laid down:

1. Where an original design, 'not copyrighted or patented, is published, or put on the market, the owner's property is limited to the articles which embody his design. Subject to the restrictions hereafter noted, others may copy the design without compensation and without acknowledgment, and offer it for sale at will.

2. Where such design is not put on the market or published, it will be protected at common law, and others may be restricted from copying it.

3. Notwithstanding the publication of such design and its disclosure to the world, it may nevertheless be protected if it is copied or imitated under circumstances generally classified under the heading of unfair competition, " palming off," being the most common example.

4. Notwithstanding publication of such design, its copying will be restricted if it involves a breach of contract or of trust, or if the design was obtained by fraudulent or unfair means.

5. In any case, in order to protect such design (not patented or copyrighted), there must not only be substantial identity, but the identity must be due to the copying of the plaintiffs' design. Similarity in and of itself will not suffice except under certain conditions in cases of " palming off."

From the multitude of decisions establishing the foregoing propositions it is only necessary to cite a few of the leading cases: *Tabor* v. *Hoffman* (118 N. Y. 30); *Montegut* v. *Hickson, Inc.* (178 App. Div. 94); *Cheney Bros.* v. *Doris Silk Corp.* (35 F. [2d] 279; certiorari denied, 281 U. S. 728); *Board of Trade* v. *Christie* (198 id. 236, 250); *Dr. Miles Medical Co.* v. *Park* (220 id. 373, 402); *International News Service* v. *Associated Press* (248 id. 215). (See, also, the historic case of *Prince Albert* v. *Strange*, 1 Hall & Twells, 12.)

In this case the plaintiffs' style No. 700 was an original creation and design; it was not thrown upon the market or published so as to become the property of the public in general; it was obtained by the defendant from the plaintiffs under an express agreement limiting its use; it was actually copied and was used by the defendant in violation of its express contract with the plaintiffs and under circumstances constituting a breach of trust and confidence. Even in the present state of the law the piracy of styles is not entirely without the pale of the eighth commandment.

The plaintiffs are entitled to judgment against the defendant for the relief demanded in the complaint.

Submit findings of fact, conclusions of law and interlocutory decree, in accordance with this decision, on notice.