## CHAMPION SPARK PLUG CO. v. REICH et al.

### No. 2979.

United States District Court
W. D. Missouri, W. D.

June 28, 1951.

See also 81 F.Supp. 275.

P. L. Edwards, Kansas City, Mo., for plaintiff.

Charles V. Garnett, Kansas City, Mo., for J. F. Reich.

Leroy J. Marts, Kansas City, Mo., for Mary Holst.

REEVES, Chief Judge.

This action was on a motion of the plaintiff to require J. F. Reich, Lois E. Reich and Mary Holst to show cause why they should not be punished for contempt of court by "selling, offering for sale and advertising for sale used spark plugs of plaintiff's original manufacture which have been repaired, reconditioned or otherwise treated to improve their appearance or usefulness without first removing therefrom plaintiff's trade-mark and type marks, by marking or stamping on the containers for said plugs the name 'Champion' or an abbreviation thereof, and by making use of plaintiff's trade-mark 'Champion' in advertising said plugs for sale, all in violation and contempt

of the injunction entered herein on or about the 4th day of November, 1941."

Pursuant to this show cause order, a hearing was had and extensive testimony taken by affidavit and otherwise, touching the conduct of the several parties cited in relation to the injunction heretofore issued in the above cause.

The evidence disclosed that after a former decree of this court, the defendant J. F. Reich, was adjudged a bankrupt and thereby avoided the payment of a judgment obtained against him by the plaintiff. The wife of the said defendant, Lois E. Reich, then took over and for a time operated the business of repairing spark plugs originally manufactured by the plaintiffs and others. Because of problems confronting the defendant and his wife, Lois E. Reich in turn transferred the business to Mary Holst who is now operator of the business originally instituted and carried on by the defendant, J. F. Reich. Mary Holst was an employee of both the defendant J. F. Reich while he was operating the business and later an employe of Lois E. Reich when she in turn operated the same business. Mary Holst was familiar with many of the problems confronting J. F. Reich and his wife Lois E. Reich.

The defendant or his wife still owns the machinery and the property where the machinery is located and where the business is being carried on. Both Mr. and Mrs. Reich aid and assist Mary Holst in sundry ways in carrying on the business. Mary Holst, however, asserts by affidavit and otherwise that such business is carried on wholly independently of the defendant J. F. Reich and his wife Lois E. Reich and that her independent course relieves her of such connection with the defendant, J. F. Reich or Lois E. Reich as to make her amenable to this contempt proceeding.

If she is amenable to this proceeding, then it is obivious from other testimony that the repairing and reconditioning of used and discarded spark plugs is not in conformity with the injunction heretofore issued and with the rulings made in the case of Champion Spark Plug Company v. Sanders, 2 Cir., 156 F.2d 488 and the same case (on affirmance) reported 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386. This is true for the reason that the metal shell of the repaired or reconditioned spark plug is not covered with paint or lacquer as required by said injunction and opinion; neither are the words "repaired" or "used" placed upon the repaired or reconditioned spark plugs in such way as to challenge the attention of the purchaser. Moreover, the repaired or reconditioned spark plugs were not placed in packages or cartons with legends that would correctly inform the public of the facts as to the repairs and the individual responsibility therefor. It appeared that the said Mary Holst shipped such repaired spark plugs in large numbers in wooden boxes without any markings whatever and that the distributors were at liberty to palm such repaired and reconditioned spark plugs off upon the public as new spark plugs put out by the plaintiff and other manufacturers.

1. The first question for decision in the case is whether Mary Holst was in privity with the defendant, J. F. Reich, or his wife, Lois E. Reich.

That there has been a disposition to avoid strict compliance with the injunction heretofore issued in the case can hardly be questioned, and, as the Supreme Court in United States v. Bryan, 339 U.S. 323, loc. cit. 334, 70 S.Ct. 724, 732, 94 L.Ed. 884, said in an analogous case, in quoting from and giving credit to Judge Learned Hand of the 2nd Circuit: " 'The question is no less than whether courts must put up with shifts and subterfuges in the place of truth and are powerless to put an end to trifling. They would prove themselves incapable of dealing with actualities if it were so, for there is no surer sign of a feeble and fumbling law than timidity in penetrating the form to the substance.' Loubriel v. United States, 2 Cir., 1926, 9 F.2d 807, 808."

■ It is the duty of the court in this case to look through the form to the substance. It was suggested by able counsel for Mary Holst that a proper proceeding would be for the plaintiff to institute another suit against her, to enjoin her from unfair trade practices or for an infringement of plaintiff's trade name. This should

not be necessary. The facts are here, and, as indicated, it is obvious that Mary Holst is operating the plant for repairing and reconditioning spark plugs with the connivance and in complicity and privity with the former owners who have been under an injunction in respect of the use of discarded spark plugs manufactured by the plaintiff.

2. A careful examination of the pleadings and the proof, including affidavits, however, does not disclose that in a single instance were these repaired and reconditioned spark plugs palmed off on the public as the product of the plaintiff. The situation is identical with that mentioned in the Sanders case, supra, where the Supreme Court said, "But there was here no showing of fraud or palming off." [331 U.S. 125, 67 S.Ct. 1139.] On the contrary, the purchasers and prospective purchasers of the spark plugs were advised that they were reconditioned and repaired spark plugs and in practically each instance the said Mary Holst, and, before her, J. F. Reich and Lois E. Reich, asked their customers to purchase and ship to them quantities of discarded and used spark plugs for reconditioning and repair.

3. Again, the court must not lose sight of the fact that individuals or corporations may lawfully acquire discarded and used spark plugs by purchase or otherwise; repair such spark plugs and restore them for further use. This is a lawful business and becomes objectionable only when such business is carried on in such way as to deceive the public and to commit a fraud upon the public by palming off such a product as a genuinely new product when in truth and in fact it is a restored or reconditioned product. Moreover, the public is entitled to know the truth in respect of the reconditioning and repairs and such circumstance of repair as would enable a purchaser to know and to understand that the product was not being offered for sale either directly or indirectly by the original manufacturer.

■ 4. As heretofore indicated, there is no showing in this case that Mary Holst has deceived the public or in any way palmed off her product in such way as to identify it with those of the plaintiff.

■ As stated by the Supreme Court in United States v. Bryan, supra, "there is, in our jurisprudence, no doctrine of 'anticipatory contempt.' "

While the said Mary Holst has not marked her spark plugs in conformity with the injunction as she is obliged to do under the circumstances, nevertheless by other means she has acquainted those dealing with her with the fact that her product is her own and that the spark plugs by whomsoever manufactured are repaired and reconditioned by her. The way is opened, however, by her method of dealing, for her customers or the purchasers from her to deceive the public and to work an injustice upon the plaintiff.

■ 5. The present proceeding is one for alleged civil contempt. As said by the Supreme Court, in McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 499, 93 L.Ed. 599: "Civil * * * contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." The plaintiff seeks a compensatory order in this case. Such order could not be made in the absence of a showing that the plaintiff has actually sustained damages. This is so in view of the statement of counsel for the plaintiff that, notwithstanding the fact the plaintiff had obtained an injunctive order yet (it is contended by counsel) it has lost ground in the litigation.

As stated by the Court of Appeals and the Supreme Court in the Sanders case, supra, the plaintiff was unable to show any damage whatever. Neither has it shown such damage in this court. If plaintiff had established in either of the courts the fact that it had suffered losses by reason of the conduct of the reconditioner, then the courts would have been alert to make such a compensatory order as the facts justified. The most that can be said of the case in its present status is that if Mary Holst continues her operations such may result in unfair competition and infringement of plaintiff's trade-mark.

■ Under the circumstances, the contempt proceedings will be held in abeyance

until a showing be made by plaintiff that it has been actually damaged through the operations of Mary Holst as by the previous operations of J. F. Reich and his wife, Lois E. Reich.

The case will, therefore, be reopened for such proof as the plaintiff may have touching the question of damages. And it will be so ordered.