ELECTROLUX CORPORATION, Respondent, *v.* VAL-WORTH, INC., et al., Defendants, and VACUUM CLEANER CONSERVATION COMPANY, INC., et al., Appellants.

First Department, February 18, 1958.

*Sidney S. Bobbé* of counsel (*Raymond Sacks,* attorney), for appellants.

*Hamilton Hicks* of counsel (*Hicks & Weller,* attorneys), for respondent.

RABIN, J. The plaintiff is the manufacturer of the well-known "Electrolux" vacuum cleaner. The appealing defendants are Solomon Sacks doing business as "Famous Vacuum Shops" and "Famous Appliance Shops", and Vacuum Cleaner Conservation Company, Inc. (hereinafter called "Conservation") of which corporation Sacks is the president and principal stockholder.

Since 1948 Conservation has been buying from the plaintiff and others, quantities of traded-in Electrolux vacuum cleaners of a discontinued model. With plaintiff's knowledge, Conservation would then recondition the cleaners and resell them as reconditioned Electrolux machines. The cleaners were advertised and sold by Conservation under the trade names "Famous Vacuum Shops" and "Famous Appliance Shops" (hereinafter called "Famous") and bore a decalcomania stating that they had been rebuilt by Famous Appliance Shops. It is quite clear that the cleaner was advertised as a rebuilt one and that there was no effort to create the impression that the same was new.

In July, 1949, the plaintiff wrote to Famous requesting that in all future advertising it be made clear that the cleaners had been rebuilt by Famous. Sacks, as president of Conservation, assured Electrolux that the plaintiff's request would be complied with and it appears that this assurance was fulfilled.

On January 12, 1953, the plaintiff objected to the use of the word "Famous" in the defendants' television advertising on the grounds that the trade name "Famous" was used in such a manner when spoken as to create the impression that the word "Famous" was an adjective referable to the plaintiff (a famous company). The defendants thereupon ceased the use of the word "Famous" in its television promotion.

Some time thereafter the plaintiff hired an investigator, one Adler, who called the television station, where defendants offered the rebuilt Electrolux for sale, asking for a demonstration of the defendants' rebuilt cleaner at his home. A salesman of defendants called on Adler and brought a rebuilt Electrolux cleaner. Adler testified that the salesman was critical of the rebuilt Electrolux cleaner and attempted to sell him another new cleaner at a much higher price. Adler was, however, able to purchase a reconditioned Electrolux cleaner from the salesman, and the machine proved satisfactory. Adler's testimony was supported in part by that of the salesman who said he was instructed to avoid selling the cheaply priced rebuilt cleaner, for which he was paid no commission, and to use his best efforts to sell the more expensive cleaner.

Thereafter and in June, 1953, the plaintiff, claiming unfair competition, instituted the instant proceeding seeking broad injunctive relief against the defendants and the sum of $15,000 in damages. The court below, after trial without jury, entered a judgment based upon its findings and enjoined the defendants from the following: (1) using the name "Electrolux" unless all the parts used in the reconditioned cleaners sold by defendants are of plaintiff's own manufacture; (2) using the reconditioned Electrolux cleaner as a lure to sell another brand machine; (3) misrepresenting the reconditioner of the rebuilt Electrolux cleaner; and (4) using the word "Famous" in advertising in such a manner as to create the misleading impression that plaintiff has reconditioned the machines sold by defendants. In addition, the judgment directed that a reference be had to determine the plaintiff's damages "including lost profits and profits of defendants attributable to their acts of unfair competition". For the reasons to be indicated, the judgment of the court below must be reversed.

The facts which obtained at the time of trial did not warrant any conclusion of actionable misrepresentation as to the identity of the rebuilder. The decalcomania affixed to the reconditioned machines plainly and clearly announced that Famous and not Electrolux reconditioned the machines. For some time prior to this proceeding plaintiff was aware of the label thus used by defendants and saw no occasion to complain. Whatever confusion may have been caused by the verbal expression "Famous" in defendants' television and radio advertising cannot now be the subject of a prohibitory decree since, at plaintiff's request, defendants promptly discontinued the word "Famous" in such sales promotion six months before this proceeding was initiated and nothing in the record suggests any likelihood that defendants will resume the discarded practice. (43 C. J. S., Injunctions, § 22, subd. d, p. 445.)

It was also error to enjoin the defendants from the use of the name "Electrolux" on their reconditioned cleaners unless all replacement parts came from the plaintiff. For the proof is that plaintiff does not sell the parts necessary for reconditioning, and that, with plaintiff's knowledge, defendants had for years rebuilt and resold as reconditioned "Electrolux" vacuum cleaners old, trade-in machines bought by defendants from plaintiff. Plaintiff is estopped from now enjoining a course of business of which it not only presumably had knowledge, but in which it actively participated and profited. (*Rothschild* v. *Title Guar. & Trust Co.*, 204 N. Y. 458, 461; *William H. Keller, Inc.* v. *Chicago Pneumatic Tool Co.*, 298 F. 52, 59; *Bennett & Sons*

v. *Farmers' Seed & Gin Co.*, 288 F. 365, cert. denied 263 U. S. 704.) In any event, since defendants merely repaired or reconditioned plaintiff's machines and did not thereby construct a substantially or basically new or different cleaner, it was open to defendants to use parts from sources other than plaintiff and then sell the product as a reconditioned cleaner. (*Champion Plug Co.* v. *Sanders*, 331 U. S. 125; *Champion Spark Plug Co.* v. *Reich*, 98 F. Supp. 242.) Defendants are not charged with offering their product as a new Electrolux cleaner; they expressly marked and sold their product as a reconditioned item; in such circumstances defendants do not deceive the public or unduly trade on the Electrolux mark in the incidental use of parts not produced by plaintiff. (*Singer Mfg. Co.* v. *Briley*, 207 F. 2d 519, 521.)

The more difficult problems here arise from defendants' practice of using the rebuilt cleaner as a lure to sell a more costly new machine not made by plaintiff. Thus the mark of Electrolux is exploited not to sell the product of Electrolux but that of another. Yet, unless we are judicially to outlaw the innumerable instances in which the retailer overtly offers a loss-lead item with the covert hope and expectation of other more profitable sales, we can find no actionable wrong to have been committed here. In this case defendants did not refuse to sell rebuilt Electrolux machines as advertised, in possible violation of section 421 of the Penal Law; defendants did in fact sell many rebuilt Electrolux cleaners, including the one sold to Adler. Nor is this the case where a competing item is palmed-off as the luring item (*Admiral Corp.* v. *Price Vacuum Stores*, 141 F. Supp. 796); the consumer was emphatically told by defendants' salesmen that the choice was between an old Electrolux and a new cleaner of a different kind. And even if we assume the availability in our courts of injunctive relief for trade disparagement (cf. *Marlin Fire Arms Co.* v. *Shields*, 171 N. Y. 384, with *Allen Mfg. Co.* v. *Smith*, 224 App. Div. 187), there is here lacking either the proof of specific loss of trade necessary to recover damages (*Reporters' Assn.* v. *Sun Print. & Pub. Assn.*, 186 N. Y. 437; *Tower* v. *Crosby*, 214 App. Div. 392) or the fully persuasive "convincing evidence" of disparagement necessary to an injunction (*Bourjois, Inc.*, v. *Park Drug Co.*, 82 F. 2d 468, 471).

What remains is, therefore, the practice of offering a well-known product at a low price to stimulate an interest which the seller attempts to divert to a lesser-known product at a more profitable price. This commonplace in the retail economy creates no cause of action. (*Sunbeam Corp.* v. *Payless Drug*

*Stores,* 113 F. Supp. 31; see, also, *General Elec. Co.* v. *Gem Vacuum Stores,* 36 N. J. Super. 234.) Of course, the owner of the mark so exploited is not without recourse. Plaintiff could have refused to sell defendants its old machines for repair and resale. Sellers can, by agreement, fix the resale prices to be charged by parties, and by nonsignatories buying from parties to the agreement. (General Business Law, art. XXIV-A; *General Elec. Co.* v. *Masters, Inc.,* 307 N. Y. 229, appeal dismissed 348 U. S. 892.) But plaintiff is not entitled, beyond these devices and the relief available for the traditional torts of infringement, unfair competition, and trade libel, to judicial restraint of the common competitive practice of loss-lead items.

The judgment of the court below should be reversed on the law and facts and judgment directed in favor of defendants, dismissing the complaint, with costs.

FRANK, J. (dissenting). I must dissent from a complete reversal of the injunction granted herein after a trial of the issues, although concurring with the majority that no reference is required and that the plaintiff failed to establish any basis for an award of damages.

My disagreement with the majority rests upon its refusal to sustain so much of the injunctive relief granted by the learned trial court as restrains the defendant, in radio, television and other advertising, from associating the word " Famous " with Electrolux in such a manner as shall be capable of misleading the public.

The facts as found are that the defendants, in the use of radio and television advertising, employed phraseology leading the unwary to believe that a used Electrolux vacuum cleaner, guaranteed for a year and rebuilt by that famous company [Electrolux], was offered for sale at a very low price. Listeners and viewers of the broadcasts were solicited to telephone or write requesting a representative to visit the home and deliver or demonstrate the appliance. The defendants employed salesmen to make such home visits, each equipped with one used Electrolux and a new machine of different manufacture, priced considerably higher. Although the proof established that the salesmen were instructed to discourage the purchase of the second-hand Electrolux in favor of a new appliance, not an Electrolux, that proof was scarcely required, for the record is clear that the sales representative, working on a commission basis, received no compensation for the sale of a rebuilt Electrolux but was paid only for the sale of a new vacuum cleaner.

It is fair to assume that the majority agrees that the method adopted by the defendants to promote the sales of new machines constituted " bait advertising ". I believe it is an equally fair inference, from the proof, that the sole purpose in soliciting a potential purchaser of a rebuilt Electrolux was to sell a new vacuum cleaner.

Unfair competition is no longer confined to " palming off " one's goods as those of another. It is an expanding concept and " ' what was not reckoned an actionable wrong 25 years ago may have become such today.' * * * ' Many earlier dicta, probably some earlier decisions, are not now safe guides.' " (*Maison Prunier* v. *Prunier's Restaurant & Cafe,* 159 Misc. 551, 555, per SHIENTAG, J., quoting in part from 40 Harv. L. Rev., 813; see, also, 1 Nims on Unfair Competition and Trade-Marks [4th Ed.], pp. 1–7.)

The term " unfair competition " no longer adequately expresses business misconduct condemned by law. The American Law Institute in its Restatement of Torts (Vol. 3, ch. 35, introductory n.) has substituted " unfair trade practices " for it and states (p. 538) : " the scope of liability in this field is constantly expanding. This is due partly to the flexibility and breadth of equitable relief and partly to changing methods of business and changing standards of commercial morality ".

In the enactment of the Federal Trade Commission Act, Congress adopted the term " unfair methods of competition," and the Supreme Court has held that the substituted phrase, although broader in meaning, cannot be defined precisely and its scope must be left to judicial interpretation as controversies arise. (*Schechter Corp.* v. *United States,* 295 U. S. 495, 531–533; *Federal Trade Comm.* v. *Roladam Co.,* 283 U. S. 643, 648, 649.)

Whether " bait advertising ", " loss leaders " and other forms of competitive advertising to attract, entice or lure customers to retail establishments constitute unfair competition is, in my view, quite beside the point. We are not here concerned with the efforts of one who seeks to attract potential customers to his business establishment, by fair means or foul. Our problem is whether we will condone misrepresentation or deception as a means for gaining entrance to a home whose privacy should be inviolate.

It is one thing for a customer to enter a market open to the public and there to discover a deception, for he is free to turn and leave. It is quite another to discover that an invitee into one's home has misrepresented the product for which the invitation was expressly extended, or has used that product as bait

to promote the sale of another. A request for such an invitee to leave rarely brings prompt compliance, and high-pressure salesmanship exerted upon a householder who has no easy means of escape from his own home should not be countenanced or encouraged.

It is my view that cases like *Sunbeam Corp.* v. *Payless Drug Stores* (113 F. Supp. 31) and *General Elec. Co.* v. *Gem Vacuum Stores* (36 N. J. Super. 234) are inapplicable here. In addition to other distinguishing factors, they do not involve the use of media such as television and radio for the purpose of gaining entrance into private homes with the intent to sell a product different from that advertised.

The Supreme Court of this State does not fail to invoke its equity jurisdiction when the facts establish unfair trade practices (*Fisher* v. *Star Co.*, 231 N. Y. 414, 428). In such a case, the courts will endeavor to adapt its relief to the equities of the particular problem as nearly as can be done (*Penney Co.* v. *Lee Mercantile Co.*, 120 F. 2d 949, 954; 87 C. J. S., Trade-Marks, p. 241; cf. *Straus* v. *Notasame Co.*, 240 U. S. 179; *Rushmore* v. *Badger Brass Mfg. Co.*, 198 F. 379; *Rowley Co.* v. *Rowley*, 193 F. 390; 3 Restatement, Torts, ch. 35, p. 541). Our courts have prohibited unfair competitive practices in a wide variety of business activities. This has been done even where there has been no direct competition, so long as the wrongdoer has resorted to subterfuge, over-reaching or unethical conduct. The emphasis is always upon the use of unfair tactics. (See *Dior* v. *Milton,* 9 Misc 2d 425, affd. 2 A D 2d 878; *Glass & Co.* v. *Art-Mor Togs,* 9 Misc 2d 339; *Margolis* v. *National Bellas Hess Co.,* 139 Misc. 738, affd. 235 App. Div. 839; *Madison Square Garden Corp.* v. *Universal Pictures Co.,* 255 App. Div. 459; *Montegut* v. *Hickson, Inc.,* 178 App. Div. 94; *Maison Prunier* v. *Prunier's Restaurant & Cafe,* 159 Misc. 551.)

"Bait advertising" was prohibited where the name of a recognized silk manufacturer was used to promote the sale of second quality merchandise and of goods manufactured by another (*Cheney Bros.* v. *Gimbel Bros.*, 280 F. 746).

It is unfair competition for a merchant to mingle permissible activities in the sale of his goods with such improper presentation, packaging or advertising of his product as would tend to confuse or deceive the public (*Ronson Art Metal Works* v. *Gibson Lighter Mfg. Co.,* 3 A D 2d 227).

If these defendants had by fraud or surreptitious design obtained a list, in the possession of the plaintiff, of persons who had requested demonstrations of the plaintiff's appliance, we would not hesitate to enjoin the use of that information. I can

see no distinction where, as here, the defendants by the misleading use of the plaintiff's name obtain such a list of prospective purchasers.

The suggestion that injunctive relief should be denied because the defendants discontinued radio and television advertising upon the plaintiff's demand and before the action was commenced should not be adopted. If the defendants, in good faith, do not intend to resume the criticized advertising, no harm can come to them by the granting of injunctive relief. If, however, they are likely to renew the condemned activity, then judicial restraint is an appropriate remedy. Mere cessation of unfair competitive practices upon demand or prior to the commencement of an action does not bar the issuance of injunctive relief (43 C. J. S., Injunctions, § 22, p. 445).

Where unfair competition is established, any doubts as to the adequacy of relief are generally resolved against the transgressor (*Champion Plug Co.* v. *Sanders,* 331 U. S. 125, 130; *Warner & Co.* v. *Lilly & Co.,* 265 U. S. 526, 532).

For the foregoing reasons, the judgment should be modified to grant injunctive relief in accordance with the views herein expressed.

BOTEIN, J. P., VALENTE and MCNALLY, JJ., concur with RABIN, J.; FRANK, J., dissents and votes to modify in opinion.

Judgment reversed upon the law and upon the facts and judgment is directed in favor of defendants dismissing the complaint, with costs to the appellants.

Settle order.