CONSUMER CONCEPTS, INC., Plaintiff,

v.

MEGO CORP., Defendant.

No. 78 Civil 3353.

United States District Court,
S. D. New York.

Sept. 12, 1978.

Keane & Butler, New York City, for plaintiff; Thomas A. Butler, Rose Mary Reilly, New York City, of counsel.

Weiss, Rosenthal, Heller, Schwartzman & Lazar, New York City, for defendant; Howard L. Mann, E. Cooke Rand, Michael R. Sonberg, New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Consumer Concepts, Inc. ("Concepts") brought this suit for an injunction and damages against defendant Mego Corporation ("Mego") charging that Mego's manufacture of a toy violated its duty of non-use and non-disclosure of confidential information conveyed to it by Concepts. Mego now moves, pursuant to section three of the Federal Arbitration Act of 1925,[1] to stay these proceedings pending arbitration. Since the dispute is embraced by an enforceable arbitration clause, Mego's motion is granted.

Concepts is a firm that develops new ideas for toys and games, which it then licenses to companies for manufacture. Mego is one such licensee. The parties have, since 1974, engaged in continuing business relations, formalized on July 22, 1975, by an "umbrella" agreement (the "July Umbrella Agreement" or "July Agreement"). Under this contract Concepts submits ideas for toys; those ideas accepted by Mego are incorporated into the July Agreement as "Items." Each Item is then attached to the July Agreement under Schedule "A." If the contract is cancelled as to any Item, Mego promises not to make

---

1. Act of Feb. 12, 1925, ch. 213, § 3, 43 Stat. 883, *codified at* 9 U.S.C. § 3:

   If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

or sell the Item.[2] The July Umbrella Agreement also provides that "[a]ny controversy or claim arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration."[3]

Prior to October 22, 1975, Concepts created an idea for a line of toys (the "Big Project") predicated on a device called "Magic Sound." On October 22, 1975, the parties were engaged in negotiations with the intent of entering into a licensing agreement whereby Mego would be licensed to manufacture toys based on Magic Sound. Because of the importance of the Big Project the parties executed a contract on that date (the "October Agreement"), under which Mego agreed that if a licensing contract relating to the Big Project were not signed by November 5, 1975, it would not disclose information about the Big Project or Magic Sound and would not make toys based on Magic Sound until 1979.[4] No agreement was reached by November 5th.

However, negotiations between the parties continued for five months with respect to one or more items based on Magic Sound. On March 22, 1976, they agreed on a license for Mego to manufacture two products based on Magic Sound.[5] This "March Agreement" incorporated the terms of the July Agreement and was added to Schedule "A" of that Agreement. In December 1976 the parties terminated the March Agreement. After the termination, Mego began to market a new toy—"2XL." Plaintiff contends that 2XL is "exactly that type of item which is a play situation and game predicated on 'MAGIC SOUND'" and charges Mego with breach of the October Agreement and misappropriation of a trade secret.[6] Mego responds with a motion to stay the proceedings pending arbitration, because, it asserts, the controversy arises out of or relates to the July Umbrella Agreement and is therefore covered by the arbitration clause.[7]

■ The Arbitration Act provides that courts shall decide the issue of arbitrability based upon their interpretation of the contractual intent of the parties.[8] Courts should, however, defer to arbitration between commercial entities unless there is a clear intent that the arbitration clause does not apply; doubts as to the parties' intent are to be resolved in favor of arbitration.[9]

---

2. Pl. Exh. 2, ¶ 18:

> MEGO agrees that if this Agreement is terminated under any of its provisions MEGO will not itself, or through others, thereafter manufacture and sell the ITEM and all rights to the ITEM and to any patent applications filed hereunder shall revert to CONCEPTS.

3. *Id.* ¶ 26.

4. Pl. Exh. 1:

> If the royalty contract on the above project is not signed by both parties by November 5, 1975, Mego loses its option, agrees not to disclose any information regarding the above project to anyone and agrees not to make or market any items predicated on the "BIG PROJECT" until 1979. It is understood that such a disclosure might harm CCI and Mego will be responsible for damages caused by such disclosure.

5. Pl. Exh. 4 (also included as page 7, Schedule "A" of Pl. Exh. 2).

6. Complaint ¶¶ 14, 16, 20, 24–26, 30–31.

7. 9 U.S.C. § 3 (quoted in full at note 1 *supra*).

> The Arbitration Act applies where there is "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." *Id.* § 2; *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir. 1959), *cert. granted,* 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *dismissed per stip.,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). The business of developing novel toy ideas and products for commercial manufacture, distribution, and sale described in the July Agreement clearly falls under interstate commerce.

8. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Fuller v. Guthrie,* 565 F.2d 259, 260 (2d Cir. 1977); *Interocean Ship Co. v. National Ship Trading Co.,* 523 F.2d 527, 539 (2d Cir. 1975).

9. *Metro Indus. Painting Corp. v. Terminal Constr. Co.,* 287 F.2d 382, 385 (2d Cir.), *cert. denied,* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); *Wells Fargo Bank Int'l Corp. v. London S.S. Owners' Mutual Ins. Ass'n, Ltd.,* 408 F.Supp. 626, 630 (S.D.N.Y.1976); *Griffin v. Semperit of America, Inc.,* 414 F.Supp. 1384, 1390–91 (S.D.Tex.1976); *Singer Co. v. Tappan Co.,* 403 F.Supp. 322, 329 & n.6 (S.D.N.Y.1975), *aff'd mem.,* 544 F.2d 513 (2d Cir. 1976).

Concepts contends that the controversy falls exclusively under the October Agreement, which it describes as "separate and distinct" from the July and March Agreements and which does not contain an arbitration clause. The central flaw in this reasoning is that the October Agreement cannot be read apart from the other two contracts and must be viewed as a supplement to the protection afforded Concepts under the July Umbrella Agreement. Between October 1975 and March 1976, the parties worked toward a license agreement relating to Magic Sound. The evidence indicates that during this period both Mego and Concepts contemplated the addition of Magic Sound to the July Agreement.[10] The purpose of the October Agreement was to give Concepts express and additional protection in case the parties never executed the license agreement with respect to Magic Sound. This protection supplemented that guaranteed by the July Umbrella Agreement. The three contracts of July, October, and March are interrelated and must be read together to ensure Concepts' rights in Magic Sound. As such, the October Agreement is a mere extension of the July Agreement, the umbrella contract governing the continuing relationship between the two firms.[11] Consequently, the arbitration clause in the July Umbrella Agreement also applies to any alleged breaches of the October contract.[12]

This conclusion is buttressed by plaintiff's own complaint, which negates its contention that the dispute is limited to the October Agreement. Plaintiff's "Third Cause of Action" charges defendant with misappropriation of a trade secret in violation of the relationship of confidence and trust created by the July Agreement and the parties' past dealing.[13] In structuring the parties' relationship, the July Agreement established the basis for their continuing relationship, whereby Concepts would submit novel ideas to Mego, which would then choose all or some of them as Items to be incorporated into the Agreement as part of Schedule "A." But the ideas *rejected* in this course of dealing are not without protection under New York law: "Any one who acquires knowledge of an unpatented [trade] secret process in a confidential capacity . . . is under an obligation . . . not to uncover the secret, even if he makes no express contract to that effect."[14] The nub

---

**10.** Frederick Pierce, Senior Vice-President of Mego, testified that in his discussions with the President of Concepts the latter "was anxious for us to make [Magic Sound] part of our agreement," Deposition of Frederick Pierce, at 38 (July 27, 1978), and "was anxious for us to proceed and incorporate this into our basic agreement of working so that we could give him enough money to allow him to develop the product," *id.* at 31. Concepts does not dispute this point. *See* Deposition of Martin Blumenthal, Vice-President of Concepts, at 6–7, 14–17 (July 28, 1978) (normal policy was to add all new ideas accepted by Mego to July Agreement; no express discussion in October on addition of Magic Sound).

**11.** *Cf. Lowell v. Twin Disc, Inc.,* 527 F.2d 767 (2d Cir. 1975); *TAC Travel America Corp. v. World Airways, Inc.,* 443 F.Supp. 825 (S.D.N.Y. 1978).

**12.** *Incontrade, Inc. v. Oilborn Int'l, S.A.,* 407 F.Supp. 1359 (S.D.N.Y.1976); *Cocotos Steamship of Panama, S.A. v. Lussino Societa di Navagazione,* No. A 193–61 (S.D.N.Y. Mar. 11, 1958).

Moreover, plaintiff has failed to make out a convincing case that the dispute does not di-rectly involve paragraph eighteen of the July Agreement, *see* note 2 *supra.* The March Agreement licensed Mego to manufacture two toys: "product two" was described as "non pre-school toys featuring characters and play situations." Pl. Exh. 3. When the March Agreement was terminated in December 1976, Mego was bound by paragraph eighteen of the July Agreement not to "manufacture and sell the Item." Plaintiff's repeated characterization of 2XL as a "play situation and game predicated on 'MAGICSOUND,'" *see* Complaint ¶ 14; Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction, at 4, would indicate that 2XL may be similar enough to product two of the March Agreement to constitute a violation of this paragraph. This contractual question is best left to the arbitrator.

**13.** Complaint ¶¶ 23–28.

**14.** *Spiselman v. Rabinowitz,* 270 A.D. 548, 61 N.Y.S.2d 138, 141 (1946); *accord, International News Serv. v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918); *Electrolux v. Val-Worth, Inc.,* 6 N.Y.2d 556, 190 N.Y.S.2d 977, 161 N.E.2d 197 (1959); *Dior v. Milton,* 9 Misc.2d 245, 155 N.Y.S.2d 443 (Sup.Ct.1956);

**546**

of plaintiff's claim for relief is the contractual duty of good faith dealing implicit in the July Umbrella Agreement.[15] As a result, the broad arbitration clause of the July Agreement covers this alleged breach of contractual duty.

This Court cannot say that the arbitration clause is not susceptible of an interpretation that embraces the asserted dispute. So that plaintiff's claims can be considered in the forum agreed upon by the parties, the proceedings before the Court are stayed pending arbitration.

---

*Margolis v. National Bellas Hess Co.*, 139 Misc. 738, 249 N.Y.S. 175 (Sup.Ct.1931); *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774 (2d Cir. 1964); *cf.* Restatement of Torts § 757, Comment j.

**15.** *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 45, 330

N.Y.S.2d 329, 333, 281 N.E.2d 142, 144, *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972); *Galfand v. Chestnutt*, 402 F.Supp. 1318, 1328–29 (S.D.N.Y.1975), *aff'd sub nom. Galfand v. Chestnutt Corp.*, 545 F.2d 807 (2d Cir. 1976); *VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F.Supp. 773, 777 (S.D.N.Y.1969).