Chris **DEMETRIADES** and Demetriades Developers, Inc., Plaintiffs,

v.

Nicholas **KAUFMANN**, Cheryl Kaufmann, Judy Koch, Dudley D. Doernberg Company, Inc., Gino Gallo and John Gallo d/b/a Gallo Brothers, and MCR Consulting Engineers, Defendants.

Nicholas **KAUFMANN**, Cheryl Kaufmann, Gino Gallo and John Gallo d/b/a Gallo Brothers, and MCR Consulting Engineers, Counterclaim–Plaintiffs,

v.

Chris **DEMETRIADES** and Demetriades Developers, Inc., Counterclaim–Defendants.

No. 88 Civ. 0848 (GLG).

United States District Court, S.D. New York.

Aug. 3, 1988.

---

Baker & Friedman by Ben C. Friedman, New York City, Shuman & Wood–Smith, by Jeffrey A. Shuman, Lelia Wood–Smith, White Plains, N.Y., for plaintiffs.

McAulay, Fields, Fisher, Goldstein & Nissen by Martin E. Goldstein, New York City, for defendants Nicholas Kaufmann, Cheryl Kaufmann, Gino Gallo and John Gallo d/b/a Gallo Bros., and MCR Consulting Engineers.

Brumbaugh, Graves, Donohoe & Raymond by Richard G. Fuller, Jr., Brendan J. O'Rourke, New York City, for defendants Judy Koch and Dudley D. Doernberg Co., Inc.

### MEMORANDUM DECISION

GOETTEL, District Judge:

On March 8 of this year, we granted in part and denied in part plaintiffs' request for preliminary injunctive relief in this matter, pejoratively termed by one wag as "the case of the copycat house."[1] We have before us a new round of motions covering a number of topics. Although discovery has elicited evidence of certain facts pertinent here (noted *infra*), most of the relevant facts are set forth in our previous decision, familiarity with which is presumed. *Demetriades v. Kaufmann*, 680 F.Supp. 658, 659–61 (S.D.N.Y.1988) [hereinafter *"Demetriades I"*].

#### a. The Copyright Claim

Under 17 U.S.C. § 501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright." Certain of the defendants —the Kaufmanns, Gallo Brothers and its principals, Gino and John Gallo, and MCR Consulting Engineers—have admitted that they engaged or were involved (albeit innocently) in the unauthorized copying of plaintiffs' architectural plans.[2] Conse-

---

**1.** Gorenberg, *Judge: Copycat house plans must be returned*, The Reporter Dispatch, March 9, 1988, at 14, col. 3.

**2.** As discussed *infra*, defendants Judy Koch and Dudley D. Doernberg Company vigorously pro-

test that they had no involvement whatsoever in the infringement here, and they move for summary judgment on those grounds.

quently, plaintiffs have moved and are entitled to partial summary judgment on the issue of liability.[3]

The amount of damages, however, is still very much in dispute.[4] Pending further discovery, a trial on this issue would appear to be necessary.

Since oral argument on the instant motions, certain disputes have arisen as to the scope of discovery on the damages question. Consequently, the parties are directed to appear in chambers for a pre-trial conference on Thursday, August 18, at 9:30 a.m. to thresh out the issues bearing on the trial of this matter.

### b. The Realtor's Liability

Defendants Dudley D. Doernberg Company and one of its employees, Judy Koch (the "Doernberg defendants"), move for summary judgment on the copyright claim on grounds that they cannot be held liable for whatever infringement took place in this action. Their involvement in this case may be succinctly summarized.

Put simply, the Doernberg defendants sold the unimproved lot at 24 Cooper Road to the Kaufmanns, a service for which they received a handsome fee. The fee was negotiated and, although it was larger than the standard percentage for sale of an unimproved lot, it apparently was not pegged to the value of the house ultimately to be constructed. Regardless, it is clear that Gallo Brothers were not interested in simply selling the lot, a fact known to the Doernberg defendants. Instead, Gallo Brothers required that purchase of the lot

be part and parcel of a deal in which Gallo Brothers would build a home on that lot for the ultimate purchaser.

It also appears that at some point during negotiations between the Kaufmanns and Gallo Brothers, the Doernberg defendants became aware that the Kaufmanns sought construction of a house on the lot in question "of 'substantially identical design' to the Demetriades house at 12A Cooper Road." *Demetriades I,* 680 F.Supp. at 660. In addition, there is a substantial factual dispute as to whether the Doernberg defendants ultimately became aware that the other defendants had obtained and/or were duplicating the plaintiffs' architectural plans. Although it is conceded that the Doernberg defendants had no hand in the direct copying of plaintiffs' plans, plaintiffs argue that the Doernberg defendants may be held derivatively liable for the direct copying engaged in by the other defendants. Plaintiffs contend that the role played by the Doernberg defendants in getting the parties together, their brokering of the real estate transaction, their knowledge that the deal was dependent both on construction of a home (Gallo Brothers' demand) and construction of a home imitative of the Demetriades house (the Kaufmanns' desire), and their alleged knowledge of the ongoing copying of plaintiffs' plans all combine to create sufficient involvement with the infringing activity to warrant liability on their part.

Federal copyright law, unlike patent law, does not expressly create any form of de-

---

3. We note that a certificate of registration, which plaintiffs have secured, is *prima facie* evidence of a valid Federal copyright. 17 U.S.C. § 410(c). That registration, however, is not immune to substantive challenge. Although defendants make allusions to the invalidity of plaintiffs' copyright, counsel's brief on the instant motions notes that "in the interest of concluding this litigation as expeditiously as possible, [defendants] will not oppose the entry of an order granting summary judgment on [the copyright] issue."

4. Among other things, there remain disputed contentions as to the nature of the copying; *i.e.,* was the copying willful or innocent. Resolution of the innocent/willful issue clearly would bear on the amount of statutory damages available

under 17 U.S.C. § 504(c). We are now advised, however, that plaintiffs are eschewing any claim for statutory damages, limiting their request solely to one for actual damages and profits pursuant to 17 U.S.C. § 504(b). Nevertheless, resolution of the innocent/willful issue *may* still be relevant. *See* M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.08, at p. 13–139 (1988) (discussing innocent infringement and potential impact on actual damages). Citing *Singh v. Famous Overseas, Inc.,* 680 F.Supp. 533 (E.D.N.Y.1988), the defendants make certain arguments in passing as to the legal vitality of a claim for willful damages in this case. That issue, however, is not properly before us at this time.

rivative, third-party liability. *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 434, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 *reh'g denied,* 465 U.S. 1112, 104 S.Ct. 1619, 80 L.Ed.2d 148 (1984). Courts have long recognized, however, that one may be held liable for the infringing acts of another, even if such a third party was in no way directly involved in the actual copying and had no knowledge that the infringing acts in question were illegal. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1161–62 (2d Cir.1971).

■ In delineating the contours of this third-party liability, and because copyright is analogous to a species of tort, "common law concepts of tort liability are relevant in fixing the scope of the statutory copyright remedy...." *Screen Gems–Columbia Music, Inc. v. Mark–Fi Records, Inc.,* 256 F.Supp. 399, 403 (S.D.N.Y.1966) (Weinfeld, J.). Guided, therefore, by wellestablished precepts of tort liability, it appears that two avenues of third-party liability in copyright have grown up in the law—"vicarious liability" (grounded in the tort concept of *respondeat superior*) and "contributory infringement" (founded on the tort concept of enterprise liability). Although the Supreme Court has noted that " 'the lines

between direct infringement, contributory infringement and vicarious liability are not clearly drawn,' " *Sony,* 464 U.S. at 435 n. 17, 104 S.Ct. at 785 n. 17 (quoting the district court's opinion),[5] a coherent body of rules seems ascertainable from the precedent of this circuit.

As to vicarious liability, the Second Circuit has noted that "[w]hen the right and ability to supervise [the infringer] coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials," a third party may be held liable for the direct infringement by another. *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963). Courts relying on this theory of third-party liability repeatedly have emphasized that some degree of control or supervision over the individual(s) directly responsible for the infringement is of crucial importance.[6]

■ The doctrine of "vicarious liability" is inapplicable in this case. We may assume that the Doernberg defendants derived some benefit from the infringement at issue[7]; but that is of little avail to plaintiffs since there is no meaningful evidence (as one might expect) suggesting that the Doernberg defendants exercised any degree of control over the direct in-

---

5. Indeed, both the leading case on this subject and perhaps the preeminent scholar in this field seem to blur the distinction. *See Gershwin,* 443 F.2d at 1162–63 (seemingly interchanging at times the terms "vicarious" and "contributory" infringer); M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.04[A], at p. 12–35 (1988) (interpreting the Copyright Act as "intend[ing] to establish the vicarious liability [of] a contributory infringer"). In its most recent decision on the subject, however, a majority of the Supreme Court expressly recognized the distinction between vicarious and contributory infringement. *Sony,* 464 U.S. at 435 n. 17, 104 S.Ct. at 785 n. 17. *Accord Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Constr. Co.,* 542 F.Supp. 252, 261–62 (D.Neb.1982). Harking back to fundamental concepts of tort law—the genesis of copyright liability doctrine, *Screen Gems,* 256 F.Supp. at 403—the plain distinctions between vicarious and enterprise liability in tort make clear that vicarious and contributory infringement must indeed be understood as two separate and distinct theories of third-party liability. *See generally* W. Prosser, Law of Torts §§ 69 & 72 (4th ed.1971) (discussing vicarious and enterprise liability).

6. It was this ability to supervise or control the direct infringers, coupled with profits reaped from the infringing acts, that served as the basis for liability in the famous "dance hall cases," collected at *Sony,* 464 U.S. at 437 n. 18, 104 S.Ct. at 786 n. 18 and *Screen Gems,* 256 F.Supp. at 402 n. 5. *See also Sygma Photo News, Inc. v. High Society Magazine, Inc.,* 778 F.2d 89, 92 (2d Cir.1985) (finding corporation vicariously liable given its exercise of control over the shell corporation that engaged in the infringement).

7. As noted, the realtor's fee in this case, which was negotiated, appears not to have been pegged to the value of the house ultimately constructed from the infringing architectural plans. Plaintiffs argue, regardless, that the transaction (and, thus, the realtor's fee) was contingent on the Gallo Brothers ability to construct a house substantially similar to the Demetriades house. Consequently, it is maintained, the Doernberg defendants, knowing the above, had a financial stake in the infringement.

fringers. *Compare Shapiro, Bernstein,* 316 F.2d at 308 (holding defendant vicariously liable since it had "the power to police carefully" the infringer's conduct).

The theory of liability ostensibly propounded in the parties' papers is based on "contributory infringement," although the parties (particularly plaintiffs) seem somewhat unsure of the applicable legal standard. That standard, however, was clearly and succinctly set forth in *Gershwin,* which held that "[o]ne who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin,* 443 F.2d at 1162.[8] In uncovering the doctrinal basis for this theory of liability, Judge Weinfeld noted that "the basic common law doctrine that one who knowingly participates in or furthers a tortious act is jointly and severally liable with the prime tortfeasor is applicable in suits arising under the Copyright Act." *Screen Gems,* 256 F.Supp. at 403, *cited with approval in Gershwin,* 443 F.2d at 1162. Thus, just as benefit and control are the signposts of vicarious liability, so are knowledge and participation the touchstones of contributory infringement.

The knowledge of the Doernberg defendants, either actual or constructive, of the direct infringing in this case is an issue in considerable dispute between the parties. Resolution of that matter is of no consequence, however, since, even assuming that these defendants possessed the requisite knowledge about the infringing activity, they cannot fairly be said to have participated in that infringement—*i.e.,* "induce[d],

cause[d], or materially contribute[d]" to the statutory violation. *Gershwin,* 443 F.2d at 1162.

The only evidence linking the Doernberg defendants to any participation in or furtherance of the infringement in this case are two telephone calls made by Ms. Koch to Rocco Circosta, an employee of MCR Consulting Engineers (the firm retained by Gallo Brothers to duplicate the plaintiffs' architectural plans). Those calls, each made at the insistence of defendant John Gallo, were initiated to (1) determine the status of the plans (production of a set of plans apparently had not proceeded at a pace the Kaufmanns desired) and (2) ensure that the completed plans would be delivered for the Kaufmanns' inspection to a specified location. There is no indication that the Doernberg defendants made these or any other contacts with the purpose of providing any direct assistance in expediting the copying process (if, indeed, they knew that copying was going on). Nor is there any evidence that the Doernberg defendants provided the means or facilities for the admitted copying.[9] To the contrary, the extensive discovery conducted to date, including the depositions of all parties, makes clear that the real estate transaction in this matter was handled by the Doernberg defendants while the construction issues were matters largely between the Kaufmanns, Gallo Brothers, and MCR Consulting Engineers.[10]

The Supreme Court has noted that "the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is

---

**8.** The Supreme Court has since noted that "contributory infringement [will not be found] if the [copyrighted] product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses." *Sony,* 464 U.S. at 442, 104 S.Ct. at 789. That consideration is not pertinent here. At oral argument, counsel for the Doernberg defendants placed great reliance on the *Sony* holding, a celebrated case involving the derivative liability of the manufacturers of video-copying equipment (in that case, the Sony Betamax), but we do not share or completely follow his view that *Sony* controls our inquiry here.

**9.** It was John Gallo who obtained a copy of plaintiffs' plans, and it was MCR Consulting Engineers, through Mr. Circosta, that did all the copying.

**10.** To the extent that plaintiffs rely on these two telephone calls as evidence that the Doernberg defendants exercised some degree of "control" over the infringers, thereby satisfying the control prong of the vicarious liability doctrine, we repeat our earlier conclusion that there is no meaningful evidence on the issue of control.

just to hold one individual accountable for the actions of another." *Sony*, 464 U.S. at 435, 104 S.Ct. at 785. We are familiar with no concept of justice that would permit extension of third-party liability in this case on so attenuated a basis. Something more—deriving from one's *substantial* involvement—is needed. *See* Restatement (Second) of Torts § 876(b) (1977) (establishing third-party, enterprise liability when one knows of another's tortious conduct and *substantially* aids or encourages that endeavor); *id.* at comment d ("The assistance of or participation by the defendant may be so slight that he is not liable for the act of another."). To hold otherwise would, in our view, flatly contradict the plain law of this circuit. *See especially Gershwin*, 443 F.2d at 1163 (holding concert promoter liable as contributory infringer, for infringements by artists it was promoting, due to promoter's "pervasive participation" in creating an audience for the artists); *Screen Gems*, 256 F.Supp. at 404–05 (denying summary judgment to advertising agency, radio station, and shipper of bootleg records given evidence of their knowing participation in the promotion or sale of these infringing products). The mere fact that the Doernberg defendants brokered a real estate transaction that ultimately was connected to a copyright infringement is not enough. Simply put, that quantum of participation necessary to impart liability to third parties is lacking as to the realtor in this case.

Plaintiffs, relying on *Screen Gems*, argue that knowledge and benefit are enough to warrant third-party liability in this case (*i.e.*, the Doernberg defendants knew of the infringing activity and benefitted therefrom). In essence, they rely on a hybrid form of liability, confusing and combining the knowledge prong of contributory infringement with the benefit prong of vicarious liability. This conclusion, we think, misunderstands both Judge Weinfeld's holding in *Screen Gems* and the intellectual foundations of vicarious and contributory infringement, discussed *supra* note 5, which serve to distinguish the two. A simple knowledge and benefit test would cast wide the net of third-party liability, ensnaring individuals far too remotely or only tangentially involved in the infringement. Such an approach would drain from the concept of liability its substantive meaning.

For all of these reasons, we grant summary judgment for the Doernberg defendants on the copyright claim.[11]

### c. The Unfair Competition Claims

■ It is beyond cavil that the sole and unmistakable unfair competition issue originally presented to the court was whether "the unique and distinctive design of DDI [Demetriades Developers, Inc.] homes, as embodied in the Demetriades house at 12A Cooper Road, ... qualif[ies] as DDI's *trade dress*." *Demetriades I*, 680 F.Supp. at 667 (emphasis added). We noted that plaintiffs' theory rested on "a novel application" of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) to the domain of residential realty, and that we thought it unlikely such an extension would be justified based on the facts of this case. *Id.*[12] Undoubtedly spurred by that preliminary finding, the defendants move for summary judgment on this count.

In their papers submitted in opposition to this motion, plaintiffs do not contest the trade dress issue; rather, they now argue that the "Demetriades" name has achieved trademark status and that the defendants are liable as infringers of that mark. The architectural plans apparently bore the "Demetriades" name, which plaintiffs contend has achieved independent recognition in the marketplace. They further maintain, therefore, that any infringing copies

11. The Doernberg defendants also move for sanctions pursuant to Fed.R.Civ.P. 11. The extent of their knowledge of and participation in the infringement in this case was a legitimate issue meriting discovery. Under those circumstances, Rule 11 sanctions would clearly be inappropriate.

12. The trade dress claim was realleged under various state claims for unfair competition, which we also found to be of dubious substance. *Demetriades I*, 680 F.Supp. at 670.

of those plans available for public inspection did or continue to constitute trademark infringement.[13]

The defendants urge that the court not permit this "eleventh hour" change in claims. Although there can be no doubt that the original unfair competition claim was founded on trade dress, based on the similar designs of the two houses in question, we note that the amended complaint does allege that plaintiffs have a reputation as creators of both unique and distinctive architectural plans and homes. Amended Complaint ¶ 22. Further, the allegations on the Lanham Act claim conclude that the "purchasing public will be confused as to the true source, sponsorship or affiliation of defendants' infringing *plans* and house." *Id.* at ¶ 30 (emphasis added). *See Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir.1988) (noting that "eleventh hour" assertion of specific claim not fatal since "[f]actual allegations alone are what matters").

Although we grant defendants' motion for summary judgment on the original trade dress claims,[14] plaintiffs are permitted twenty days leave to replead so that the now-asserted Federal trademark claim (together with any pendent state claims that may validly be maintained) can be better articulated.

### d. The Defendants' Motion for a Preliminary Injunction

The defendants move for a protective order enjoining the plaintiffs from, in the defendants' words, "falsely advising third parties of the status of this litigation, or the meaning of any documents issued as a result of the litigation." The request stems principally from a letter sent to the attorney for the Village of Scarsdale which, in simple terms, sought to strong-arm the Village into producing for impoundment the copy or copies of the infringing architectural plans filed (according to law) by the defendants that still remain in the Village's possession.

Pursuant to our earlier decision, we entered an order requiring, *inter alia,* that all copies of the infringing architectural plans *in the defendants' possession* be delivered to the court for impoundment pending the outcome of this litigation, "including but not limited to all copies of Defendants' Plans on file with the Scarsdale Board of Architectural Review and the Scarsdale Building Department *if such can be secured from said Board and Department upon demand by the defendants.*" *Demetriades v. Kaufmann,* No. 88 Civ. 0848, at ¶ (b) (S.D.N.Y. Mar. 22, 1988) (order for preliminary injunction) (emphasis added). The defendants later submitted affidavits averring that they had fully complied with the above order, and that an unsuccessful demand for production of the plans in question had been made of the relevant Scarsdale departments. On March 24, one of plaintiffs' counsel[15] wrote to the Scarsdale attorney, articulating plaintiffs' belief that "the defendants *and the Village of Scarsdale* are in violation of the Preliminary Injunction" (emphasis added), threatening the Village with "contempt proceedings" to ensure full compliance with this court's March 22 order.

At best, counsel's language in the March 24 letter is inartful, expressly or implicitly—but definitely grossly—overstating the breadth of our March 22 order. The Village of Scarsdale is not a party to this action, and our March 22 order, as is plain from its language, neither directed nor

---

13. As will be discussed *infra,* a copy or copies of the infringing plans remain with the Scarsdale Building Department and/or the Scarsdale Board of Architectural Review.

14. The defendants also move for sanctions under Fed.R.Civ.P. 11, asserting that the original trade dress claims were frivolous. Rule 11 requires that the complaint be grounded in "existing law or a good faith argument for the extension, modification, or reversal of existing law." Although we noted in our earlier decision that plaintiffs' trade dress claims were "novel" and that plaintiffs were *unlikely* to justify an extension of trade dress law to the instant case, *Demetriades I,* 580 F.Supp. at 667, it cannot be said that plaintiffs failed to make a good-faith argument for the law's extension. Consequently, defendants' Rule 11 motion is denied.

15. Plaintiff has had three sets of counsel at various stages of this action, perhaps explaining in part the changed nature of the claims of unfair competition.

commanded any action by the Village. Nonetheless, granting defendants' motion for a protective order is of little consequence, and leaves unresolved the broader and thorny problem created by the Village's continued possession (and presumed availability for public inspection) of copies of the infringing plans. Various options for addressing this issue were discussed at oral argument on the instant motions, and its resolution (particularly if the new trademark claim survives) would seem to be in the best interests of *both* parties. As plaintiffs have assured that they intend to move to address this problem consistent with our discussions at oral argument, defendants' motion is denied.

### Conclusion

For all of the above reasons:

(1) plaintiff's motion for partial summary judgment on the issue of copyright liability is granted against defendants Nicholas and Cheryl Kaufmann, Gino and John Gallo d/b/a Gallo Brothers, and MCR Consulting Engineers;

(2) defendants Judy Koch and Dudley D. Doernberg Company, Inc. are granted summary judgment on the copyright claim, as asserted against them;

(3) defendants' motion for summary judgment on the original trade dress claims—both federal and state—is granted, although plaintiffs are permitted twenty days leave to replead the nowasserted trademark claim based on the "Demetriades" name;

(4) defendants' motion for a preliminary injunction is denied; and

(5) all motions for sanctions are denied.

SO ORDERED.