Chris DEMETRIADES and Demetriades
Developers, Inc., Plaintiffs,

v.

Nicholas KAUFMANN, Cheryl Kauf-
mann, Judith B. Koch, Dudley D.
Doernberg Company, Inc., Gino Gallo
and John Gallo d/b/a Gallo Brothers,
and MCR Consulting Engineers, De-
fendants.

Nicholas KAUFMANN, Cheryl Kauf-
mann, Gino Gallo and John Gallo
d/b/a Gallo Brothers, and MCR Con-
sulting Engineers, Counterclaim–Plain-
tiffs,

v.

Chris DEMETRIADES and Demetriades
Developers, Inc.,
Counterclaim–Defendants.

No. 88 Civ. 0848 (GLG).

United States District Court,
S.D. New York.

Oct. 27, 1988.

Baker & Friedman, New York City (Ben C. Friedman, of counsel), Shuman & Wood–Smith, White Plains, N.Y. (Lelia M. Wood–Smith, of counsel), for plaintiffs.

McCaulay, Fields, Fisher, Goldstein & Nissen, New York City (Martin E. Goldstein, New York City, Harold Blass, White Plains, N.Y., of counsel), for defendants Nicholas Kaufmann, Cheryl Kaufmann, Gino Gallo and John Gallo d/b/a Gallo Brothers and MCR Consulting Engineers.

Brumbaugh, Graves, Donohue & Raymond, New York City by Richard G. Fuller, Jr., Brendan J. O'Rourke, for Doernberg defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This case continues to present novel issues for resolution by the court. Among other things, the instant motions require that we chart the extension of New York's expansive law against unfair competition to the domain of residential development. Although we embark on that course with some trepidation, we think the New York courts would shape the malleable law proscribing all forms of "commercial immorality" to provide residential developers with at least some limited protection from the unauthorized appropriation of their labors.

The facts of this case have been set forth in two previous decisions, familiarity with which is presumed. *Demetriades v. Kaufmann*, 680 F.Supp. 658 (S.D.N.Y.1988)

("*Demetriades I*"); *Demetriades v. Kaufmann,* 690 F.Supp. 289 (S.D.N.Y.1988) ("*Demetriades II*"). The upshot of this widely publicized cause celebre involves the misappropriation by certain of the defendants of plaintiffs' copyrighted architectural plans for a home built at 12A Cooper Road in Scarsdale (the "Demetriades house"). The plans were then copied and the infringing plans were used to construct a home (the "Kaufmann house") imitative of plaintiffs' original work.

In the last round of motions, we dismissed the federal and state claims sounding in trade dress infringement, but allowed plaintiffs' leave to replead newly asserted claims for unfair competition based on defendants' alleged infringement of the "Demetriades" trade name. *Demetriades II,* 690 F.Supp. at 294–295. This new round of motions is comprised of defendants' motions to dismiss (or, in the alternative, for summary judgment) all claims other than the copyright claim asserted in the Second Amended Complaint. In addition, a dispute has arisen as to the scope of discovery allowable in ascertaining the breadth of damages to which plaintiffs are entitled due to the copyright infringement in this case. Defendants' motion for a protective order in that regard is also before us. For reasons that will become clear, we consider first the substantive arguments raised as to the constituent claims asserted in the Second Amended Complaint before turning to the motion for a protective order.

### a. Alleged Violations of the Preliminary Injunction

In *Demetriades I,* we (1) preliminarily enjoined defendants from further, unauthorized copying of plaintiffs' architectural plans, (2) preliminarily enjoined defendants from relying on any infringing copies of plaintiffs' plans, and (3) ordered the impoundment of all infringing copies of plaintiffs' plans that remained within the defendants' control. *Demetriades I,* 680 F.Supp. at 666 & 670. A subsequent order was issued in conformance with that decision. *Demetriades v. Kaufmann,* No. 88 Civ. 0848 (S.D.N.Y. Mar. 22, 1988) (Order for Preliminary Injunction).

As a consequence of our decision, defendants were required to prepare new plans governing the continued construction of the Kaufmann house. *Demetriades I,* 680 F.Supp. at 666 n. 3. Plaintiffs now allege that the Kaufmann and Gallo defendants, in preparing these new plans (which were subsequently filed with the Scarsdale Building Department), violated the injunctive remedy ordered in *Demetriades I.* As articulated by plaintiffs' counsel, "[T]he Kaufmanns and Gallos continued to rely on infringing copies of the [plaintiffs'] Plans by submitting 'as built' plans to the Scarsdale Building Department to enable them to continue to rely on the infringing plans, rather than going through the expense of creating a new set of plans by reverse engineering." Plaintiffs' Brief, at 26. Nowhere are the terms " 'as built' plans" or "reverse engineering" specifically defined for the court. Nonetheless, the nub of this claim quite obviously is that, in violation of our decision in *Demetriades I,* the Kaufmann and Gallo defendants allegedly relied upon an infringing copy of plaintiffs' architectural plans in drawing up the new plans submitted for the Kaufmann house. Were this so, it would certainly be a violation of our decision in *Demetriades I* and subsequent order.

In their reply papers on this motion, the defendants submit the affidavit of the architect employed to prepare the new plans. He avers that, between March 9 and March 17 of this year, actual measurements, inspections, and photographs of the partially constructed Kaufmann house were made. That data, we are assured, together with the actual survey of the property, served as the bases for the new plans. Kahn Aff. ¶¶ 3–4.

There has been no discovery, however, on this specific issue and, on its face, the second claim states a valid cause of action. Consequently, dismissal of the second claim is denied, but without prejudice to the motion's renewal should discovery confirm the Kahn Affidavit and reveal that this claim is without factual foundation.

### b. The Federal Claim of Unfair Competition

Plaintiffs next contend that defendants, by falsely designating the infringing architectural plans and passing them off as their own, have violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("section 43(a)").

Defendants argue that this "problem is easily solved by merely affixing to the plans retained in the Scarsdale Building Department some type of label, to be agreed upon by the parties and ordered by this Court, showing the origin of the original plans." Kaufmann Defendants' Brief, at 8. Defendants further maintain that, at least under section 43(a), injunctive relief of this nature would be the exclusive remedy available to plaintiffs on this claim. Thus, they curiously conclude, defendants "are entitled to dismissal of the claim, since a trial would merely be an imposition on this Court's time." Id. Needless to say, this proposition, although novel, is hardly grounds for dismissal of a validly asserted cause of action.

If plaintiffs have stated a valid claim for unfair competition under the Lanham Act (and defendants offer no substantive challenge to that claim), and if plaintiffs are entitled to injunctive relief of the kind above described, the mere fact that a trial is not needed to fashion that relief does not discharge this court of its jurisdiction.

Alternatively, defendants contend that we have no jurisdiction over the Lanham Act claim because this case does not involve interstate commerce. Although we think this challenge presents a close question, we reject it in light of the broad precedent guiding our actions.

Jurisdiction under section 43(a) of the Lanham Act is premised expressly upon a defendant's actions in placing into "commerce" a good or service containing a false designation of origin. 11 U.S.C. § 1125(a). "Commerce" is defined under the statute to comprise "all commerce which may lawfully be regulated by Congress," id. at § 1127, that is to say all commerce within the ambit of the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, as that clause has been construed by the courts. Here, the allegedly misdesignated plans were filed solely with the Scarsdale Building Department and/or Board of Architectural Review. Although, on its face, this action would not appear to fall within the express language of the statute, the Second Circuit has held that a defendant's wholly *intrastate* activities will be subject to section 43(a)'s apparently long reach if those activities may be said to affect plaintiff's business and that business is interstate. *Arrow United Indus., Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 413 n. 5 (2d Cir.1982). We find that the broad rule articulated in *Arrow United* has been satisfied here.

Initially, we note that although plaintiffs allege that they are engaged in interstate commerce as developers and builders of luxury homes under the "Demetriades" trade name, Second Amended Complaint ¶ 15, Mr. Demetriades testified at his deposition that *all* homes he has developed and built have been limited to Westchester County, New York. Demetriades Dep., at 10. Nonetheless, the affidavit of Dino Yotides, a project manager for plaintiff Demetriades Developers, Inc. ("DDI"), was submitted by plaintiffs with the last round of motions in this case. Mr. Yotides averred that out-of-state residents have looked at and purchased DDI homes in the past, that DDI homes are often listed with multiple-listing real estate brokers who have out-of-state offices, and that DDI homes are often advertised in the New York Times (which, of course, enjoys wide interstate circulation). Yotides Aff. ¶¶ 2–5. If true, these interstate contacts, although admittedly limited, would be sufficient to establish that plaintiffs are doing business interstate under the broad notions of interstate commerce that have held sway in this circuit in the past. *Lobo Enter., Inc. v. The Tunnel, Inc.*, 822 F.2d 331, 332–33 (2d Cir.1987); *B & B St. James Pub, Inc. v. Hod O'Brien Rest. Corp.*, 189 U.S.P.Q. 732, 733 (S.D.N. Y.1975).[1]

Consequently, defendants' motion to dismiss the Lanham Act claim for want of

---

1. It might also be argued, we would think, that plaintiffs use numerous materials that are

jurisdiction is denied. In addition, plaintiffs have realleged this claim under New York common law. Consistent with *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966), we choose to exercise pendent jurisdiction over this claim as well.[2]

■ Judy Koch and Dudley D. Doernberg Company (the "Doernberg defendants"), the realtor defendants in this action, move separately for summary judgment on this claim. There has been considerable discovery in this case, including the depositions of all parties. There is no evidence linking the Doernberg defendants to any wrongdoing associated with the infringing plans. In *Demetriades II*, we dismissed the copyright claim against these defendants on grounds, *inter alia*, that there was no evidence that they had " 'induce[d], cause[d], or materially contribute[d]' to the statutory [copyright] violation." *Demetriades II*, 690 F.Supp. at 293 (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971)). Likewise, there is no evidence demonstrating that the Doernberg defendants had anything whatsoever to do with the alleged misdesignation of the infringing plans, nor did they have anything to do with injecting these plans into the stream of commerce. Consequently, the Doernberg defendants' motion for summary judgment on the third claim is granted.

#### c. The Remaining Pendent Claims

■ Plaintiffs' fifth claim is grounded in what this circuit has termed New York's

"adaptable and capacious" tort of unfair competition. *Roy Export Co. v. CBS, Inc.*, 672 F.2d 1095, 1105 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). There appear to be few limits on this evolving tort. Its essence, it has been said, is to protect "property rights of commercial value ... from any form of commercial immorality," *Metropolitan Opera Ass'n v. Wagner–Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483, 492 (Sup. Ct.1950), *aff'd*, 279 A.D. 632, 107 N.Y.S.2d 795 (1st Dep't 1951) (per curiam), and its confines are marked only by the "conscience, justice and equity of common-law judges." *Id.* 101 N.Y.S.2d at 488.

Relying primarily on this branch of unfair competition law, plaintiffs note that, through one of plaintiffs' workmen known by Gallo Brothers, defendants came into unauthorized possession of plaintiffs' architectural plans. Moreover, and apparently not content with simply the pilfered plans, it is alleged that the Kaufmann defendants trespassed upon the property at 12A Cooper Road after completion of construction, entered the home, and took pictures of the interior. The purpose of this extracurricular photography, it appears, was to fill in whatever details could not be supplied by the architectural plans. Plaintiffs allege that these wrongful acts of misappropriation constitute unfair competition as it is broadly defined under *Metropolitan Opera* and its progeny. A claim for trespass (plaintiffs' fourth claim) is added.[3]

To the extent that this claim derives from the wrongful appropriation of plain-

shipped interstate in designing and building their homes, further underpinning the assertion that their business is interstate. Such a contention, however, is not proffered.

2. Two days before oral argument on the instant motions, the Village of Scarsdale agreed to return to the defendants the set of infringing plans in the Village's possession, although it kept *sheets 8 and 9* of the plans which show plumbing, roof, and wall construction details. As alluded to in our last decision, defendants had heretofore been unsuccessful in their efforts to obtain the infringing copy of plaintiffs' plans on file with the Scarsdale Building Department. *Demetriades II*, 690 F.Supp. at 295–96. It appears that these are the last set of

available, infringing plans and may now be impounded. This recent development *may* moot plaintiffs' third claim, or at least certain of its aspects (*i.e.*, the need for injunctive relief). Of course, any claim for damages—*to the extent that such are recoverable under this claim and can be proven*—would remain.

3. We can only add that, if imitation is the highest form of flattery, defendants' determined efforts to at least obtain the information necessary to produce a faithful duplicate must be viewed as high praise indeed of plaintiffs' work. Obviously, that is of little consolation in ameliorating whatever damages were caused by the admitted rip-off in this case.

tiffs' plans, we hold that it is preempted. Since January 1, 1978, federal copyright law expressly has preempted all legal and equitable state actions "that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). It is well established that "state law claims that rely on the misappropriation branch of unfair competition are preempted," *Warner Bros., Inc. v. ABC, Inc.*, 720 F.2d 231, 247 (2d Cir.1983), and this circuit specifically has declined to find an exception to that general rule for those claims deriving from the commercial immorality branch of unfair competition outlined in *Metropolitan Opera. Financial Information, Inc. v. Moody's Investors Serv.*, 808 F.2d 204, 208 (2d Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 79, 98 L.Ed. 2d 42 (1987). *Accord* 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 1.01[B], at pp. 1–21 to 1–22 (1988). Consequently, the misappropriation of plaintiffs' plans cannot serve as the basis for this claim.[4]

■ As to the misappropriation of certain interior features of the Demetriades house, the question presented requires a novel and difficult application of the commercial immorality doctrine. Although we have little doubt that the doctrine's malleable nature will allow its extension to the facts of this case, we tread warily in expanding a doctrine that already has grown to formidable proportions.

We begin with the bedrock premise that, notwithstanding the expansive scope of the doctrine as fashioned by New York's courts, a claim of this nature must remain bottomed on the misappropriation of a property right belonging to another. *Roy Export*, 672 F.2d at 1105; *Metropolitan Opera*, 101 N.Y.S.2d at 493. The property

right alleged here is in the interior features of the Demetriades house.[5] Plaintiffs, in fashioning the contours of this interest, cite various cases involving the misappropriation of trade secrets. Any suggestion, however, that these features are equivalent to trade secrets is rejected out of hand. *See generally Minnesota Mining & Mfg. Co. v. Technical Tape Corp.*, 23 Misc.2d 671, 192 N.Y.S.2d 102, 112–14 (Sup.Ct.1959) (outlining criteria to be employed in evaluating whether allegedly appropriated matter constitutes a trade secret, noting expressly that a trade secret *cannot* be comprised of matters completely disclosed by the marketed good), *aff'd mem.,* 15 A.D.2d 960, 226 N.Y.S.2d 1021 (2d Dep't 1962). Defendants contend that since the features in question do not constitute trade secrets, and since the law of the case prevents plaintiffs from claiming trade dress protection in these items, *Demetriades II*, 690 F.Supp. at 295, this claim for unfair competition must be dismissed. We think this conclusion, however, rests on too grudging a view of the generous and "capacious" nature of the cause of action asserted.

Moving well beyond the confines of trade secrets and the like, New York's courts have construed the existence of protectable property interests deriving from an individual's "labor, skill, expenditure, name and reputation." *Metropolitan Opera*, 101 N.Y.S.2d at 492. *See also Continental Dynamics Corp. v. Kantner*, 64 A.D.2d 975, 408 N.Y.S.2d 801, 802 (2d Dep't 1978) (per curiam) (holding that misappropriation of customer lists, although not considered trade secrets, nevertheless states cause of action under unfair competition). There can be little doubt that the design features

---

4. Plaintiffs' insistent reliance on *Roy Export Co. v. CBS, Inc.*, 672 F.2d 1095 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) for a contrary conclusion is entirely misplaced. *Roy Export* held only that, in construing pre-1978 copyright law, "[a]pplication of state unfair competition laws to unpublished works protected by *common-law copyright* is preserved from preemption...." *Id.* at 1106 (emphasis added). It expressly left open the preemption question posed by the alleged misappropriation of federally copyrighted materials, *id.* at 1106 n. 19, and the applicability of 17 U.S.C. § 301, as

effective January 1, 1978, was not before the court. Those questions were squarely presented in *Moody's Investors*, which, as noted above, unequivocally held that there did not exist any exception to the general rule of preemption in the misappropriation area for those claims based on commercial immorality.

5. Plaintiffs suggest that these features "consist of the designs of cabinetry, molding and other detail work developed and refined by plaintiffs." Plaintiffs' Brief, at 2 n. 1.

in question are the product of plaintiffs' skill and labor, thereby bringing the subject matter of this claim within the all-encompassing definition of "property" fashioned by the New York judiciary. Our inquiry, however, does not end there.

The property interest asserted by plaintiffs is not open-ended. For example, we doubt that plaintiffs may assert a cognizable property interest in the molding designs, cabinets, and shelves of a home they design and develop once that home has been sold and title has passed. At that point, a developer has no ability to control who is invited into the house, who sees its features, and who takes note of pertinent designs with an eye toward copying. Once title has passed, the developer has, in essence, placed his or her goods into the public domain, and whatever abstract property interest may previously have been asserted in the home's features is lost. As the New York Court of Appeals long ago noted in a partially analogous context: "[I]ndependent of copyright or letters patent, an inventor or author, has, by the common law, an exclusive property in his invention or composition, *until by publication it becomes the property of the general public.*" *Tabor v. Hoffman,* 118 N.Y. 30, 34, 23 N.E. 12 (1889) (emphasis added). Once "publication" has occurred, property rights are forfeited.[6]

▉ In the domain of residential development, we mark that point at the time title passes. Thereafter, the duplication of the home's interior features by another, it seems to us, cannot be prevented by the developer under a theory of unfair competition, nor would such duplication be compensable in damages. To hold otherwise would be to award residential developers a quasi-patent or copyright in the home's features, a back-door result via the law of unfair competition we previously characterized as both pernicious and mischievous. *Demetriades I,* 680 F.Supp. at 669–70.

We doubt further that, once title has passed, this result would be changed by virtue of a trespass or wrongful (*i.e.,* unconsented-to) appropriation. We are aware, as plaintiffs emphasize, that the wrongful appropriation of a trade secret remains actionable even though the subject matter of the appropriation could have been obtained by legal or proper means. *Tabor,* 118 N.Y. at 36, 23 N.E. 12. *Accord Minnesota Mining,* 192 N.Y.S.2d at 116; *Cornale v. Stewart Stamping Corp.,* 129 N.Y.S.2d 808, 814–15 (Sup.Ct.1954). In all of those cases, however, publication had not occurred; the trade secret remained just that—a secret—the discovery of which was achieved by illicit means. The *ratio decendi* of those cases is inapposite once publication has occurred.

We return, therefore, to the root premise of the instant cause of action—the wrongful appropriation of another's property interest. That interest must exist in the first instance; a trespass or other wrongful behavior, although objectionable in its own right, will not transform the nature of the interest allegedly appropriated. The property interest must exist independently at the inception of the appropriation. If it does, then the scurrilous nature of the appropriation makes the defendant's behavior actionable as a commercial wrong under New York law. If no such interest exists at the time of appropriation, the mere fact that the subject matter was "taken" pursuant to a trespass or other illicit conduct

6. Thus, the property rights we recognize today are necessarily limited to the interior features of the development. The exterior features, unless somehow concealed from public view, are publicly revealed when constructed. An individual passing by the construction site who photographs the development's exterior with an eye toward copying cannot be said to have misappropriated the developer's property. As we noted in *Demetriades I,* individuals remain free to duplicate residential designs unless and until such designs are secured by patent. *Deme-triades I,* 680 F.Supp. at 666. *But see Margolis v. National Bellas Hess Co.,* 139 Misc. 738, 249 N.Y.S. 175, 179 (Sup.Ct.1931), *aff'd,* 235 A.D. 839, 257 N.Y.S. 912 (1st Dep't 1932) *and Montegut v. Hickson, Inc.,* 178 A.D. 94, 164 N.Y.S. 858 (1st Dep't 1917) (each holding that pirating of "original designs" constitutes unfair competition even though the designs were in the public domain, although each case seems implicitly to treat the "original designs" in question as trade secrets and each involved the breach of an employee's duty of trust).

does not create a property right and cause of action in unfair competition.[7]

Thus, although we believe the New York courts would be prepared to recognize a property interest applicable to the facts of this case, we believe that to be so only in accord with the narrow rule we have enunciated. Until title in the developed property passes, it may be said that the designer-developer possesses a property interest in the interior features of his or her development, the wrongful or unauthorized appropriation of which (whether or not accompanied by an actual trespass or the like) might be termed a form of commercial immorality as that terminology is expansively defined by the New York courts.[8]

Turning to the facts of this case, we think a *prima facie* claim has been presented. Plaintiffs allege that they owned the property at 12A Cooper Road at the time of the alleged acts in question (the trespass(es) and photograph of the interior) and that the interior features allegedly appropriated were the product of plaintffs' skill and labor. This states a valid cause of action under the commercial immorality branch of New York's unfair competition law. The fact that the Kaufmanns, who do not compete with plaintiffs, did the alleged appropriating does not alter our conclusion. The parties need not be actual competitors for this cause of action to survive. *Metropolitan Opera*, 101 N.Y.S.2d at 491–92. Moreover, we presume that the pictures taken by the Kaufmanns were provided to the defendant Gallo Brothers, plaintiffs' competitors, to aid in the replication effort.

■ Defendants' principal line of defense to this claim is a challenge to our jurisdiction, arguing that the exercise of pendent jurisdiction is unwarranted under the principles of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966). We disagree.

First, we think this matter fairly "comprises but one constitutional 'case' ... deriv[ing] from a common nucleus of operative fact." *Id.* at 725, 86 S.Ct. at 1138. The suit, at its core, involves the misappropriation of plaintiffs' work. Certain of that work (plaintiffs' architectural plans) is protected by a federal copyright, and plaintiffs have remedies at law for the admitted appropriation of these plans. Certain of plaintiffs' other work (the interior features of the Demetriades house) are protected under New York law consistent with our circumscribed holding today. Plaintiffs, therefore, are entitled to damages if it can be shown that the alleged misappropriation of those features did in fact occur. Although these are separate claims, they are not unrelated. To the contrary, they are constituent parts of a single action designed to recompense plaintiffs for the unauthorized appropriation of their property.

Second, it makes little sense in our mind to try the federal and state matters before separate fora. Obviously, the discovery on the copyright and Lanham Act claims will not mirror that to be had on the commercial immorality claim, but much of it will overlap. Especially in light of the formidable record that has been developed in this case to date, notions of "judicial economy, convenience, and fairness to litigants" further counsel in favor of the exercise of pendent jurisdiction. *Id.* at 726, 86 S.Ct. at 1139.

---

7. Such conduct, of course, may be actionable as a trespass or theft, maintainable by the home's current owner, but it does not give rise to an unfair competition action by the home's designer-developer.

8. Plaintiffs brief on the instant motions at times makes a distinction between the "unlawful act" and "commercial immorality" branches of unfair competition law. The distinction, to the extent it exists at New York law, is not pertinent here. Whatever unlawful acts would give rise to a misappropriation claim here would be subsumed under the broader catchall of commercial immorality. If the interior features were misappropriated by illegal means, such as trespass, that certainly would be commercially immoral as well. The commercial immorality doctrine goes further, however, proscribing conduct that, while not necessarily illegal, violates notions of fair play or ethics in commercial relations. *Metropolitan Opera*, 101 N.Y.S.2d at 488–92. Thus, even if a trespass cannot be proven in this case, proof of the unauthorized appropriation of the interior features of the Demetriades house may be sufficient to state a claim under New York's cavernous cause of action sounding in commercial immorality.

Finally, we note that federal preemption helps shape the form of plaintiffs' commercial immorality claim. This fact further militates in favor of our decision to exercise pendent jurisdiction over this claim. *Id.* at 727, 86 S.Ct. at 1139.

■ As with the third claim, the Doernberg defendants move separately for summary judgment, contending that there is no evidence that they engaged in any of the commercially immoral behavior that serves as the basis for this count.[9] They also move for dismissal of the fourth claim (trespass) as asserted against them on grounds that this court should decline to exercise pendent jurisdiction.

We note that, under normal circumstances, the motion for summary judgment would be denied as premature since the motion, in effect, is on the pleadings. The motion's posture, however, must be viewed in proper context. As noted *supra*, there has been considerable discovery in this case. Indeed, this new claim sounding in commercial immorality is the product of certain of that discovery, which revealed a possible trespass into the then-constructed Demetriades house resulting in the alleged misappropriation. Deposition testimony disclosed that Ms. Koch, on one occasion only, accompanied the Kaufmann defendants onto the property at 12A Cooper Road (in March of 1987). There is no evidence, however, that she engaged in any of the behavior constituting the alleged misappropriation of the interior features of the Demetriades house.[10] Given the considerable discovery that has already taken place (limited discovery on the second and fifth claims and as to damages remain as the only substantial matters outstanding), plaintiffs cannot simply rest on their pleadings, feebly hiding behind a professed need for additional discovery, and expect to survive a motion for summary judgment. Fed.R.Civ.P. 56(e); *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). They "must set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Moreover, whatever Ms. Koch's moral duty, it cannot be said that she was under a legal duty to prevent the Kaufmanns from taking pictures of the Demetriades house. *Cf. Demetriades II*, 690 F.Supp. at 292 (holding Doernberg defendants could not be found vicariously liable for the copyright infringement in this case "since there is no meaningful evidence (as one might expect) suggesting that [they] exercised any degree of control over the direct infringers").[11]

Absent such a duty, we flatly reject the proposition that the Doernberg defendants can nonetheless be held jointly liable under New York's unfair competition law simply because they brokered the real estate transaction in this case. Plaintiffs seem bent on dragging the Doernberg defendants into this case on whatever legal theory can be conjured up. We can appreciate the fact that Mr. Demetriades feels burned by a realtor with whom he had done business in the past. This court, however, absent a legally cognizable cause of action, will not allow itself to be used simply as a forum for venting free-floating frustration. The Doernberg defendants had a right to bring the other defendants together, broker the real estate transaction at issue, and profit

---

**9.** Although the Doernberg defendants previously have been granted summary judgment on all federal claims in this action, we may still exercise jurisdiction over the commercial immorality claim asserted against them if it is properly founded. *Astor–Honor Inc. v. Grosset & Dunlap, Inc.*, 441 F.2d 627, 629–30 (2d Cir.1971).

**10.** Indeed, it appears that no pictures were taken of the interior features during that visit, nor does it appear from the deposition testimony that any of the defendants entered the house that day.

**11.** We note that the Doernberg defendants were not brokering the sale of the property at 12A Cooper Road, and thus owed no sort of contractual or fiduciary duty to plaintiffs.

therefrom. The fact that the parties to this transaction then engaged in copyright infringement and allegedly in behavior actionable under New York's law proscribing unfair competition does not ineluctably lead to the conclusion that the realtor's actions thus were tainted. Notwithstanding plaintiffs' apparent beliefs to the contrary, the realtor in this case cannot be held liable simply on a theory of osmosis.[12]

Because there is no evidence linking the Doernberg defendants with the allegedly improper behavior in this case, their motion for summary judgment on plaintiffs' fifth claim is granted. Moreover, we decline to exercise pendent jurisdiction over the trespass claim as it is asserted against the Doernberg defendants. This claim, as it relates to the other defendants, is inextricably linked with the fifth claim sounding in commercial immorality. The exercise of pendent jurisdiction as to those defendants, therefore, is proper. With the commercial immorality claim dismissed as against the Doernberg defendants, however, there is no sound basis for exercising pendent jurisdiction over a freestanding trespass claim. If plaintiffs have a legitimate claim for trespass against the Doernberg defendants, they may bring it in state court.[13]

### d. Copyright Damages

█ The remaining defendants move for a protective order over any discovery relating to the profits derived from the construction and sale of the house and land at 24 Cooper Road. The contention, mainly, is that since the house itself does not constitute an infringement of plaintiffs' architectural plans, *Demetriades I*, 680 F.Supp. at 666, profits realized from construction of the Kaufmann house cannot comprise a valid measure of the copyright damages in this case.

Like many of the issues heretofore presented, determining the scope of copyright damages in this case is a matter with somewhat difficult and unique considerations (especially in light of our holding in *Demetriades I*). Plaintiffs seek copyright damages under 17 U.S.C. § 504(b), which allows the copyright owner "to recover the actual damages suffered by him as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages." There seems little doubt that plaintiffs are entitled to recover some measure of damages for the value of the copied plans. The motion before us pivots on a determination as to what damages beyond the plans' value may be recoverable. Our holding today, however, obviates the need to address this question at this time.

Although the pertinent case law to which we are referred is sparse, it appears that under New York's unfair competition law a successful plaintiff is entitled to an accounting of profits realized from the commercially immoral appropriation. *Lawrence of London, Ltd. v. Count Romi, Ltd.*, 30 A.D.2d 518, 290 N.Y.S.2d 125, 127–28 (1st Dep't 1968) (per curiam). If it can

---

**12.** Plaintiffs place great reliance on the fact that the Doernberg defendants profited from a real estate contract in this case that allegedly called for the duplication of certain interior features of the Demetriades house. Plaintiffs' Brief, at 17 n. 12. We have not seen the contract for sale, but similar arguments were made in a motion to reargue our last decision granting the Doernberg defendants summary judgment on the copyright claim. In denying that motion, we noted that the "weight accorded these facts by plaintiffs minimizes a crucial issue, to wit, that the defendants are not prohibited *per se* from constructing a house of substantially similar design to that of the house at 12A Cooper Road unless plaintiffs have obtained a design patent." *Demetriades v. Kaufmann*, No. 88 Civ. 0848, at 2 (S.D.N.Y. Aug. 29, 1988) (citing *Demetriades I*, 680 F.Supp. at 666). Likewise, the defendants are not prohibited *per se* from duplicating the interior features of the Demetriades house, and any reference that such duplication was part of the bargain is not damning in and of itself. The defendants *are* prohibited from engaging in commercially immoral means to achieve that duplication, as delimited by this decision, and any defendants *engaging in or aiding such behavior* may be held accountable in damages. There is no evidence, however, that the Doernberg defendants engaged in or aided the alleged misconduct here.

**13.** We understand that the damages in such an action would derive from the imprints left by Ms. Koch as she trod upon the property at 12A Cooper Road.

be shown that defendants misappropriated any of the interior features of the Demetriades house and used the misappropriated material in constructing the house at 24 Cooper Road, then plaintiffs would be entitled to an accounting for at least certain of the profits realized from that construction. Although the scope of allowable recovery is a matter we need not determine now, plaintiffs' ability potentially to recover under New York's unfair competition law at least certain profits attributable to construction dictates that we deny defendants' request for a protective order. This we do without need, therefore, to address the copyright damages issue.

### Conclusion

For all of the above reasons:

(1) the motions by defendants Nicholas and Cheryl Kaufmann, Gino and John Gallo d/b/a Gallo Brothers, and MCR Consulting Engineers to dismiss or for summary judgment on plaintiffs' second, third, fourth, and fifth claims, as those claims have been delimited by this decision, are denied;

(2) the motion of these same defendants for a protective order is denied; and

(3) the motion of defendants Judy Koch and Dudley D. Doernberg Company, Inc. for summary judgment on the third and fifth claims, as asserted against them, is granted, and their motion to dismiss the fourth claim, as asserted against them, also is granted for want of jurisdiction.

The clerk shall enter judgment dismissing defendants Judy Koch and Dudley D. Doernberg Company, Inc. as parties to this action, and the caption shall be modified to reflect this result.

SO ORDERED.